CHAMBERS OF
THE HONORABLE GINA L. SIMMS
UNITED STATES MAGISTRATE JUDGE
MDD_GLSchambers@mdd.uscourts.gov

6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770
(301) 344-0627 PHONE
(301) 344-8434 FAX



August 5, 2019

Stephen F. Shea, Esq.
801 Roeder Road, Suite 550
Silver Spring, MD 20910

Leah Golshani, Esq.
Special Assistant United States Attorney
Social Security Administration Ofc. Of
General Counsel
6401 Security Blvd.
Baltimore, MD 21235

Subject: *Yvette J. v. Saul*[1]
Civil No.: 8:18-cv-1282-GLS

Dear Counsel:

Pending before this Court are cross-motions for summary judgment. (ECF Nos. 19, 21). Acourt must uphold the Social Security Administration's ("SSA" or "the Agency") decision if it supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3)(2016); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence rule "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Chater*, 76 F.3d at 589. A court shall not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the SSA. (*Id.*). Upon review of the pleadings and the record, this Court finds that no hearing is necessary. Local Rule 105.6. For the reasons set forth below, both Motions are DENIED and the SSA's judgment is remanded for further consideration.

## I. BACKGROUND

Plaintiff filed a Title II Application for Disability Insurance Benefits and Title XVI application for Supplemental Security Income Benefits on April 3, 2014, alleging a disability onset date of June 1, 2010. (Tr. 30). The SSA denied Plaintiff's application initially on June 18, 2014, and upon reconsideration, denied it again on September 25, 2014. (*Id.*). The Administrative Law Judge ("ALJ") granted Plaintiff's request for a hearing and conducted it on August 28, 2015. (*Id.*). At the hearing, Plaintiff amended her alleged onset date to December 1, 2013. (*Id.*). On October 27, 2015, the ALJ issued a decision finding the Plaintiff was not disabled within the meaning of

---

[1] On June 17, 2019, Andrew Saul was sworn in as Commissioner of the Social Security Administration. Commissioner Saul is substituted as the Defendant pursuant to Fed. R. Civ. P. 25(d).

the Social Security Act during the relevant time frame. (*Id.*). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final, reviewable decision of the Agency. (Tr. 1-3).

The Plaintiff appealed that decision to this Court. (Tr. 863-64). This Court granted remand and issued its order on March 31, 2017. (Tr. 848). Pursuant the District Court's remand, the Appeals Council asked the ALJ to consider further "the claimant's mental impairments in accordance with the special technique," "give further consideration to the claimant's maximum residual functional capacity," and "consolidate the claimant's Title II and subsequent Title XVI claims files.)" (Tr. 764). The ALJ granted Plaintiff's request for a hearing, which was heldon November 29, 2017. (*Id.*). On January 3, 2018, the ALJ issued a decision finding that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. (Tr. 761; 774). This finding became the final and renewable decision of the Commissioner.

## II. ANALYSIS PERFORMED BY THE ADMINISTRATIVE LAW JUDGE

In deciding to deny Plaintiff's claim, the ALJ followed the five-step sequential evaluation process regarding disability set forth in 20 C.F.R. § 416.920. *See also Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015). The steps used by the ALJ were as follows: step one, assess whether Plaintiff engaged in substantial gainful activity since the alleged disability onset date; step two, determine whether Plaintiff's impairments met the severity and durations requirements found in the regulations; step three, ascertain whether Plaintiff's medical impairment met or equaled an impairment listed in the regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. ("the Listings"); step four, analyze whether Plaintiff could perform her past work, given the limitations caused by her impairments; and at step five, analyze whether Plaintiff could perform any work. (Tr. 31-40). Because the first three steps did not yield a conclusive determination, the ALJ also assessed Plaintiff's Residual Functional Capacity ("RFC")—i.e., the "most the claimant 'c[ould] still do despite, physical and mental limitations that affect[ed] her ability to work"—by considering all of Plaintiff's medically determinable impairments, regardless of their severity. *See Mascio*, at 635 (quoting 20 C.F.R. § 416.945(a)(1)). Per *Mascio*, Plaintiff bore the burden of proof through the first four steps of the sequential evaluation process. 780 F.3d at 636. Upon making the requisite showing, the burden shifted to the Agency at step five to prove that Plaintiff could perform other work that "exist[ed] in significant numbers in the national economy," in light of her "[RFC], age, education and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

Here, the ALJ found that Plaintiff suffered from the following severe impairments beginning on February 14, 2014: a mental impairment variously diagnosed as depression, anxiety, panic disorder without agoraphobia, bipolar II disorder, parent-child relational problem, and agoraphobia with panic attacks and vascular headaches. (Tr. 766-67). Recognizing those severe impairments, the ALJ determined that Plaintiff had the RFC to:

> perform a full range of work at all exertional levels but with the following non-exertional limitations: [she] can perform no more than simple, 1-4 step routine,

repetitive tasks in a less stress work environment, defined as requiring only occasional decision making and occasional changes in work setting, where there would be occasional contact with coworkers and supervisors and no contact with the general public, and which would not require fast pace production quotas such as would customarily be found on an assembly line. (Tr. 769).

At the hearing, a vocational expert ("VE") testified about whether a hypothetical person with the same limitations as the Plaintiff could perform Plaintiff's prior work as a daycare provider or receptionist. (Tr. 772). The VE testified that the hypothetical person could not, but could perform other work existing in significant numbers in the national economy e.g., an institutional cleaner, a janitor/industrial cleaner, a linen room attendant, a housekeeping cleaner, a sorter, a sorter/examiner, and an addressing clerk. (Tr. 773). Therefore, the ALJ found that the Plaintiff was not disabled. (*Id.*).

### III. DISCUSSION

On appeal to this Court, Plaintiff asserts that the ALJ committed several prejudicial errors in evaluating the Plaintiff's mental impairments and RFC by failing to: (a) properly set forth a narrative discussion to support each of the conclusions within the RFC assessment regarding Plaintiff's mental limitations; (b) properly consider the evidence from the state agency physicians' opinions regarding Plaintiff's ability to perform certain tests; (c) include any mention of the side effects of Plaintiff's medication, Lamictal; and (d) include any limitations addressing Plaintiff's migraines in the RFC assessment. (ECF No. 19, pp. 6-10).[2]

I find that remand is appropriate, for the reasons set forth immediately below.

When assessing a claimant's RFC, the regulations require that an ALJ consider all the claimant's medically-determinable impairments, including any medically-determinable impairments that are not "severe." 20 C.F.R. § 416.925(a)(2). The ALJ is to consider any inconsistency between the evidence and the extent to which there are any conflicts between a claimant's statements and the rest of the evidence. 20 C.F.R. § 404.1529(c)(4). An ALJ will determine if a claimant's symptoms will diminish his or her capacity for basic work activities, subject to the symptoms being consistent with the objective medical evidence and other evidence. *Id.* The RFC determination should include a "narrative discussion describing how the evidence supports each conclusion citing specific medical facts . . . and nonmedical evidence." Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *7 (July 2, 1996). Accordingly, a "proper RFC analysis contains three components: (1) evidence, (2) logical explanation, and (3) conclusion. The second component, the ALJ's logical explanation, is just as important as the other two." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). *See also Petry v. Comm'r, Soc. Sec.*

---

[2] On remand, the ALJ was responsible for "evaluat[ing] the claimant's mental impairments in accordance with the special technique" and "giv[ing] further consideration to the claimant's maximum residual functional capacity[.]" (Tr. 854-55). Plaintiff does not set forth any objection to the ALJ's evaluation of the Plaintiff's mental impairments using the special technique described in 20 C.F.R. §§ 404.1520a and 416.920a. (ECF No. 19, pp. 4-11). Therefore, this opinion only analyzes Plaintiff's contentions regarding the ALJ's assessment of the Plaintiff's RFC.

*Admin.*, No. SAG-16-464, 2017 WL 680379, at *2 (D.Md. Feb. 21, 2017) (the ALJ should build "an accurate and logical bridge from the evidence to his conclusion").

Plaintiff contends that the ALJ failed to adequately explain how her mental impairments translated into a limitation of performing "simple one to four-step routine in a low stress work environment." (ECF No. 19, p. 6). I agree that the ALJ did not set forth a proper explanation to support their conclusion. (Tr. 769-72). The Fourth Circuit has held that "meaningful review is frustrated when an ALJ goes straight from listing the evidence to stating a conclusion." *Thomas*, 916 F.3d at 311. An ALJ's narrative discussion "must both identify evidence that supports [the] conclusion and build an accurate and logical bridge from [that] evidence to [the] conclusion." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (internal quotation omitted). Here, I am unable to determine how the ALJ accounted for Plaintiff's mental limitations in the RFC, as the ALJ did not explain how he determined that Plaintiff is able to complete a one-to-four step routine. Accordingly, because the ALJ failed to provide an explanation consistent with Fourth Circuit precedent, remand is necessary.

Plaintiff next avers that the ALJ improperly considered the opinions of the state agency physicians in his RFC assessment. (ECF No. 19, p. 8). The ALJ accorded "great weight" to the opinions of Drs. James L. Meyers and Nancy Hinkelday in determining Plaintiff's RFC. (Tr. 771). In their opinions, Drs. Meyers and Hinkelday each determined that Plaintiff had a limitation of performing simple one-to-two-step instructions as opposed to one-to-four-step instructions. (Tr. 87, 108). An additional state agency physician also determined that Plaintiff was limited to simple one-to-two-step instructions. (Tr. 843). In the instant case, the ALJ determined that, to accommodate Plaintiff's mental limitation, Plaintiff could perform one-to-four step tasks. (Tr. 769). Reviewing the ALJ's decision, however, I am not able to discern how the ALJ reached this conclusion given the consultants' opinions and the "great weight" the ALJ accorded with each. (Tr. 87, 108). Although the ALJ clearly reviewed Plaintiff's medical records, the failure to explain how Plaintiff's medical history translates into Plaintiff being able to perform one-to-four step and why this conclusion discounted the opinions of the state agency physicians after assigning them great weight requires an explanation to support. (Tr. 769-72). Without a proper explanation as to how the facts and medical evidence translates into the Plaintiff's limitations, this Court is unable to complete its meaningful review. *See Woods*, 888 F.3d at 694 (remand necessary where the ALJ fails to explain how evidence supports conclusion).

Plaintiff next argues that the ALJ did not adequately account for the side effects of Plaintiff's medicine Lamictal in the RFC assessment. (ECF No. 19, p. 8). Plaintiff was prescribed Lamictal to treat her mental impairment, which she testified caused significant somnolence. (Tr. 1175, 1181, 1191, 1197). In her examinations Plaintiff informed her treating physicians that Lamictal caused her to feel "sleepy all the time" and requested that her prescription be changed. (Tr. 1175, 1181). The ALJ failed to explain how an individual with the degree of somnolence described by Plaintiff, sleeping for weeks at a time, is capable of performing substantial gainful activity. (Tr. 807). The SSA contends that the ALJ evaluated all relevant evidence in concluding that the Plaintiff showed no more than moderate symptoms of somnolence. (ECF No. 21-1, p. 6) (*See e.g.*, Tr. 770). However, the Fourth Circuit has held that "remand may be appropriate where

an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636. In the instant case, the ALJ failure to explain or to cite to specific medical evidence that demonstrates how Plaintiff would be able to perform substantial gainful activity when she has previously complained otherwise. This inadequate explanation frustrates meaningful review. Accordingly, remand is also appropriate on this basis for further analysis.

Plaintiff further contends that the ALJ failed to explain how she is able to perform a full range of work despite her severe headaches. (Tr. 43-46). The SSA argues that the ALJ accounted for the headaches within steps two and three of the function-by-function analysis and within the RFC assessment. (ECF No. 21, p. 7). Specifically, the SSA points to the ALJ's findings that Plaintiff's headaches are relieved by sleep.[3] (Tr. 770). The purpose of the RFC is to assess an individual's ability to do sustained work related to physical and mental activities in a work setting on a regular basis. SSR 96-8p. However, the ALJ did not provide specific references to the record explaining how Plaintiff's headaches translated to a limitation of performing one-to-four step tasks, given that the ALJ found them to be severe. (Tr. 769-70). *See Muir v. Astrue*, No. SKG–11–2041, 2013 WL 140779, at *9 (D.Md. Jan. 3, 2013) (finding Plaintiff's headaches would prevent him from performing a full range of sedentary work on a sustained base). In reviewing the hearing transcript, the ALJ asked the VE hypothetically how many days a month a theoretical person could miss and remain competitively employable. (Tr. 795). The VE said, "only two days per month." (*Id.*). In *Fetter v. Comm'r, Soc. Sec. Admin.*, the court remanded the case because there was no indication that "the ALJ accounted for absenteeism or decreased productivity as a result of the migraine headaches." No. JMC-15-2250, 2016 WL 3646850, at *2 (D.Md. July 7, 2016). Similarly, here, remand is appropriate because the ALJ fails to explain how the Plaintiff will miss less than two days of work with severe headaches and remain competitively employable. On remand, the ALJ will need to ensure that Plaintiff's RFC addresses the impact of her headaches on her absenteeism and productivity.

Finally, Plaintiff asserts that the ALJ failed to perform any real assessment of the Plaintiff's credibility related to her subjective complaints. (ECF No. 19, pp. 10-11). Because the case is being remanded on other grounds, I need not address this argument. However, on remand, the ALJ should consider to what extent or impact, if any, does Plaintiff's subjective allegations have on her credibility assessment and to properly ensure that this is set forth within the decision.

Despite remanding the case for further findings consistent with this opinion, I express no opinion as to whether the ALJ's ultimate finding that Plaintiff is not disabled, and therefore, not entitled to benefits is correct.

For the reasons set forth above, Plaintiff's Motion for Summary Judgment, (ECF No. 19), is DENIED and Defendant's Motion for Summary Judgment, (ECF No. 21), is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED IN PART due to

---

[3] However, Plaintiff's medical records reflect that she suffered from insomnia. (Tr. 346). The Court is unable to discern how sleep could be a remedy for Plaintiff's headaches when she also allegedly suffers from insomnia. On remand, the ALJ should more fully explain his findings.

*Yvette J. v. Saul*
GLS-18-1282
August 5, 2019
Page 6

inadequate analysis. The case is REMANDED for further analysis consistent with this opinion. The clerk is directed to CLOSE this case.

     Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely,

/s/
The Honorable Gina L. Simms
United States Magistrate Judge